UNITED STATES DISTRICT
WESTERN DISTRICT OF KENTUCKY
CIVIL ACTION NO.  5:23-cv-131-BJB
PADUCAH DIVISION

*Electronically Filed*

LAKEVIEW 360, LLC                                                                       PLAINTIFF

v.

TS-GROVE PT-MARINAS GTB, LLC
(Serve Registered Agent via certified mail:
Cogency Global Inc.
828 Lane Allen Road
Suite 219
Lexington, KY 40504)

MARKEL AMERICAN INSURANCE COMPANY
(Serve Registered Agent via certified mail:
Corporation Service Company
421 West Main Street
Frankfort, KY 40601)                                                                   DEFENDANTS

---

### COMPLAINT WITH A JURY DEMAND

---

Comes the plaintiff, Lakeview 360, LLC (hereafter "Plaintiff"), by and through the undersigned counsel, and for its Complaint in the above styled action, hereby pleads as follows:

**PARTIES AND JURISDICTION**

1.      Plaintiff is a limited liability company formed and organized under the laws of the Commonwealth of Kentucky with its principal office located at 1120 Star Gate Road, Evansville,

IN 47725. Its members are Eric Mullen, a citizen of Indiana, and his spouse, Ellen Mullen, also a citizen of Indiana.

2. Defendant TS-Grove PT-Marinas GTB, LLC is a limited liability company organized under the laws of the state of Delaware. It conducts business in Kentucky under the assumed name of Green Turtle Bay Resort (hereafter "Green Turtle Bay"). It maintains its principal office in Miami, Florida. Upon information and belief, none of the members of this defendant are citizens of Indiana. Service of process may be effectuated upon this defendant via certified mail upon its registered agent at the address noted in the above caption.

3. Defendant Markel American Insurance Company ("Markel") is a foreign insurance corporation domiciled in the Commonwealth of Virginia and authorized to conduct business in the Commonwealth of Kentucky. Service of process may be effectuated upon this defendant via certified mail upon its registered agent at the address noted in the above caption.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 and § 1441 because complete diversity of citizenship exists between the parties and because the amount in controversy is greater than the minimal jurisdictional amount.

5. Venue is proper in the Western District of Kentucky, Paducah Division pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this complaint occurred in Grand Rivers, Livingston County, Kentucky.

## FACTUAL BACKGROUND

6. Plaintiff is the owner of a 2001, 48' Sea Ray 480 Sedan Bridge water vessel. Plaintiff housed the vessel during the boating season at a dock slip rented from Kentucky Dam Marina in Gilbertsville, Kentucky.

7. Following the 2022 boating season, Plaintiff engaged Green Turtle Bay to perform certain maintenance and repairs to the vessel including sanding the fiberglass, repair of blisters, application of an epoxy, repair of a swim deck and other maintenance items.

8. The vessel was delivered to Green Turtle Bay on Sunday, November 6, 2022. Green Turtle Bay thereafter undertook to perform the maintenance and repair work to the vessel.

9. On or about November 10, 2022, Green Turtle Bay notified Plaintiff that the vessel had suffered damage when the synthetic web sling used to suspend the vessel in the air failed causing the vessel to collapse to the ground. Upon information and belief, the synthetic web sling was nearly seven years old at the time of the incident.

10. As a result of the catastrophic collapse, the vessel suffered substantial damage including but not limited to the following: cracking of the fiberglass along the keel and transom, the rudders were pushed into the bottom of and through the hull, fiberglass surrounding the area of the rudder through-hulls was damaged, the struts and baseplate (where it is attached to the hull) were bent and recessed into the hull with surrounding cracks and displacement of hull material. The shafts were bent and were shifted into cutlass bearings. There were cracks in the topside of the vessel, daylight could be seen from the engine compartment around the displaced rudders, the steering components of the vessel were bent, rudder shaft holders were bent upwards, linkage or steering arm connecting the two rudders was pushed up and aft towards the transom damaging components attached there. The shore power breaker box and trim tab pump were broken away from the transom surface. The trim tab fluid was observed in the bilge under the water heater. The water heater brackets were pulled from the base with the screws visible. The strut mountings inside the hull suffered visible damage with significant cracks and displacement of layers of cored hull fiberglass/material (protruding into bilge space) around the

through-hull bolts. There were visible cracks at the base of each bulkhead between the aft (generator) and engine rooms. The starboard shaft appeared to have been shoved into the transmission, possibly binding/restricting movement and fiberglass damage appeared on the flybridge.

11. Markel issued policy No. MHY00000578376 to Plaintiff for the policy effective dates of 06/08/2022 to 06/08/2023 (the "Markel Policy"). The Markel Policy provided coverage for accidental physical loss or damage to the vessel with a policy limit of $284,000.00.

12. Plaintiff provided notice to Markel of the loss and at Markel's request, submitted a Statement of Loss seeking coverage under the above-referenced policy.

13. Markel retained Southwind Marine Services to conduct a survey of the damage and to provide an estimate for the repairs. Upon information and belief, a representative of Southland Marine Services conducted a survey of the vessel's damage in late November 2022.

14. Plaintiff's owners requested a copy of the survey results performed by Southwind Marine Services. Markel's claim representative informed the Mullens that the survey report was considered "work product" and refused to provide the survey to its insured. Markel's representative advised the Mullens that the estimated cost to repair the vessel was $130,000.00.

15. Following numerous requests by the Mullens, on February 23, 2023, Markel finally provided a worksheet from Southwind Marine Services estimating costs for labor, material, taxes, and shipping in the amount of $131,116.10.

16. Plaintiff engaged Grubb Marine Surveying & Consultants out of Fort Lauderdale, Florida, to conduct a survey of the damage. A representative of the company, Justin Grubb, surveyed the vessel and issued a report dated February 7, 2023 (the "Grubb Report"). As opined in the Grubb Report, the vessel suffered severe impact damage to the stern area, including but

not limited to, the swim platform and its hydraulic lifting and locking components, the port and side rudders, shaft logs, p-brackets, propellors and shafts. In addition, spider cracks and impact chips were noted on the flybridge hardtop, some at the bases of the hardtop and some on the hardtop aft area.

17. While the Grubb Report estimated it would cost $229,314 to repair the damage, it cautioned that "[t]here is also a high probability of unseen structural damage as fiberglass is not designed to sustain sever *[sic]* shock loading as would have been the case with such an impact."

18. The Markel Policy provides coverage for sudden accidental direct physical loss or damage to the insured vessel. The Markel Policy further provides Markel will pay policy limits for a total loss or a constructive total loss. A constructive total loss is defined under the policy to mean the cost to recover and/or repair the damaged property will exceed the applicable limit of insurance.

19. Pursuant to an endorsement to the Markel Policy, coverage for a partial loss is provided on an "actual cash value" basis. Actual cash value is defined as the "replacement cost of the lost or damaged property less depreciation."

20. Markel offered to settle for the "undisputed value" of Plaintiff's claim for $132,352 which is comprised of the $131,116.10 estimated by Southwind Marine Services, an additional amount of $22,490 to transport the vessel to a repair shop, and an additional transportation allowance of $5,000 for removal of the flybridge and to load the vessel. However, Markel reduced the repair estimate by $20,573.12 for depreciation but provided no explanation for how it was determined.

21. There is no "undisputed value" of Plaintiff's claim as suggested by Markel. Plaintiff disputes Markel's claim that the vessel suffered only a partial loss. By categorizing the

event as a partial loss, Markel can reduce the amount owed for the loss by over $20,000 for "depreciation" without any explanation for how such depreciation was determined.

22. On the other hand, if the vessel suffered a total or constructive total loss, Markel would be obligated to pay Plaintiff the applicable limit on the Declarations Page or $284,000.00 without any reduction for depreciation.

23. The policy obligates Plaintiff to bring any suit against Markel for coverage provided under PHYSICAL DAMAGE within 12 months after the date of Plaintiff's knowledge of the loss. The loss occurred on or about November 10, 2022.

## COUNT I
### (Cause of Action against Green Turtle Bay--Bailment)

24. Plaintiff adopts and incorporates the averments set forth above as if fully set forth herein.

25. Plaintiff delivered and entrusted the vessel to Green Turtle Bay which engages in the business of providing maintenance and repair services to water going vessels. At all relevant times herein, Green Turtle Bay retained sole possession and custody of the vessel while it was undergoing the maintenance and repair work requested by Plaintiff.

26. A bailment relationship exists between Plaintiff as bailor and Green Turtle Bay as bailee.

27. When delivered to Green Turtle Bay, the vessel did not suffer any structural or other damage caused when the vessel fell to the ground while suspended in the air with nearly seven-year-old marine synthetic straps used by Green Turtle Bay to suspend the vessel in the air.

28. Green Turtle Bay has failed to return the vessel to Plaintiff without the damage caused when it fell to the ground. Accordingly, a prima facia case exists, and Green Turtle Bay

has the burden to establish the vessel was not damaged due to its failure to exercise ordinary care and caution.

29. The vessel has suffered a total loss and cannot be reasonably repaired. Any repair that could be effectuated would not compensate Plaintiff for the stigma and diminution in value caused by the structural and other physical damages to the vessel. As such, Green Turtle is liable to Plaintiff for all losses incurred by Plaintiff including but not limited to the fair market value of the vessel, any diminution in value or stigma damages, loss of use, and all other consequential and incidental damages caused by the negligence of Green Turtle Bay.

## COUNT II
### (Cause of Action against Green Turtle Bay-Negligence)

30. Plaintiff adopts and incorporates the averments set forth above as if fully set forth herein.

31. Pleading in the alternative, Plaintiff states that at all times herein, Green Turtle Bay owed Plaintiff the duty to exercise ordinary care and caution while hoisting and securing the vessel in the air while performing service work including but not limited to ensuring the vessel was appropriately blocked while suspended and the synthetic slings were properly inspected, maintained or replaced. It was reasonably foreseeable that a breach of this duty would result in damage to the vessel.

32. Green Turtle Bay breached the duty of ordinary care and caution which caused substantial physical damage to the vessel when it collapsed to the ground while it was suspended in the air without appropriate blocking.

33. In addition, Green Turtle Bay had a duty to properly train and supervise its employees responsible for hoisting and suspending the vessel in the air while undertaking the

service work. Green Turtle Bay breached its duty to properly train and supervise its employees, which caused the vessel to suffer substantial physical damage.

34. As a result of Green Turtle Bay's negligence as described herein, the vessel has suffered substantial physical damage and cannot be reasonably repaired. Any repair that could be effectuated would not compensate Plaintiff for the stigma damages and diminution in value caused by the structural and other physical damages to the vessel.

35. Plaintiff is entitled to a judgment compensating it for all damages caused by the breach including but not limited to the fair market value of the vessel, improvements to the vessel, any diminution in value or stigma damages, loss of use, and all other consequential and incidental damages caused by the negligence of Green Turtle Bay.

## COUNT III
### (Claim under Markel Insurance Policy)

36. Plaintiff adopts and incorporates the averments set forth above as if fully set forth herein.

37. The Markel Policy provides coverage for sudden accidental direct physical loss or damage to the insured vessel. The Markel Policy further provides Markel will pay policy limits for a total loss or a constructive total loss. A constructive total loss is defined under the policy to mean the cost to recover and/or repair the damaged property will exceed the applicable limit of insurance.

38. Markel has offered to pay Plaintiff for a partial loss to the vessel. Under the Agreed Total Loss Actual Cash Value Loss Endorsement to the policy, a partial loss is paid on an actual cash value basis.

39. Actual cash value is defined in the Markel Policy as the "replacement cost of the lost or damaged property less depreciation." Markel determined the vessel suffered a partial loss

and can be repaired for $131,116.10. Markel further reduced this value by $20,573.13 for depreciation.

40. The vessel has incurred a total loss or a constructive total loss in that it cannot be reasonably repaired and has most likely suffered unseen structural damage as fiberglass is not designed to sustain severe shock loading.

41. As such, Markel is obligated under the Markel Policy to pay Plaintiff the full policy limits of $284,000 for the total loss or constructive loss of the vessel.

**WHEREFORE**, Plaintiff hereby requests the following relief:

A. Judgment against Green Turtle Bay for all damages incurred to the vessel owned by Plaintiff, including but not limited to the fair market value of the vessel, improvements to the vessel, any diminution in value, stigma damages, loss of use, consequential and incidental damages or any other damages caused by Green Turtle Bay.

B. A judgment against Markel for the policy limits of $284,000 to the extent Plaintiff is not fully compensated by its claim against Green Turtle Bay.

C. Pre-judgment and post-judgment interest at the statutory rate.

D. Attorney fees.

E. A trial by jury on all issues so triable.

F. Any and all other damages, whether legal or equitable, to which Plaintiff may be entitled.

Respectfully submitted,

KEULER, KELLY, HUTCHINS,
BLANKENSHIP & SIGLER, LLP
100 South 4th Street, Suite 400
Paducah, KY 42001
Phone: (270) 448-8888
Fax: (270) 448-0998
dkelly@kkhblaw.com

By: /s/ David L. Kelly
      David L. Kelly, Esq.

*Attorneys for Plaintiff*